# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:18-cr-00044-TWP-TAB |
| ) | |
| KEVIN INGRAM, a/k/a BOOSTER, ) | -01 |
| VYCTORYA COBB ) | -02 |
| Defendants. ) | |

## ENTRY REGARDING RULE 404(b) NOTICE

This matter is before the Court on Plaintiff, the United States of America's ("the Government") Notice Pursuant to Federal Rule of Evidence 404(b) contained in their Trial Brief (Filing No. 69), and their Supplemental 404(b) Notice (Filing No. 105). For reasons explained below, the 404(b) Notices are **approved in part and disapproved in part**.

## I. BACKGROUND

Defendant Kevin Ingram ("Ingram") is charged with three counts of Interference with Commerce by Robbery and one count of Attempted Interference with Commerce by Robbery of the following. Count 1: an Eyes by India salon on October 16, 2017; Count 2: a DJ Beauty Supply store on October 17, 2017; Count 3: a separate Eyes by India salon on October 20, 2017; and Count 4: a Dollar Tree store on October 23, 2017. Ingram is also charged in Counts 5, 6, 7 and 8 with Possession of a Firearm in Furtherance of a Crime of Violence during all four robberies, in violation of 18 U.S.C. § 924(c)(1)(A). His co-defendant and former girlfriend, Vyctorya Cobb ("Cobb") is charged with participating in the robberies in Counts 2 and 3. The male robber in Count 1 wore a mask and hooded sweatshirt pulled over his head and in Counts 2, 3 and 4, although unmasked, the male robber wore a hoodie pulled over his head and sunglasses. Following her

arrest, Cobb gave a post-*Miranda* statement to law enforcement officers, describing her and Ingram's involvement in Counts 2 and 3. ([Filing No. 69 at 6-7](#).) She also stated, among other things, that she has previously seen Ingram fire the handgun used in the robberies. *Id*. On October 24, 2018, Cobb entered a plea of guilty to Count 3. ([Filing No. 111](#).) Ingram's jury trial is scheduled to begin on November 5, 2018.

The Government proffers that Cobb will testify at Ingram's trial as follows. On October 17, 2017, she and Ingram stopped at DJ Beauty Supply on Lafayette Road in Indianapolis, Indiana, where she asked Ingram to make a purchase for her. Cobb waited in the car while Ingram went into the store. After a few minutes, Ingram quickly came out of the store and hastily jumped into Cobb's vehicle, after which it became clear that Ingram had robbed the DJ Beauty Supply. On October 20, 2017, she and Ingram traveled to a parking lot in the Castleton area where they had a heated exchange about Ingram's plans to rob a store. Cobb will testify that during the argument, Ingram threatened her with a small semi-automatic handgun, grabbed her collar, choked her, and commanded her to participate in the robbery with him. She relented, donned gloves, and participated in the robbery of the Eyes by India salon. She will testify that Ingram used the gun he threatened her with during the robbery of the salon. Cobb will also testify that she participated in the Eyes by India robbery not only because of Ingram's threat at that time, but also because of his long history of domestic violence towards her. She may also testify that Ingram had previously fired a handgun at her vehicle over a severe disagreement. The issues at trial will be identity and whether the device used in the charged robberies was a real handgun. ([Filing No. 108 at 2](#).)

## II. LEGAL STANDARD

Federal Rule of Evidence 404(b)(1) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity

therewith." F.R.E. 404(b)(1). Rule 404(b)(2) allows such evidence when it is used for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. F.R.E. 404(b)(2). The Seventh Circuit has provided a four-part test to be used in 404(b) determinations. Courts are to consider whether: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *See United States v. Howard,* 692 F.3d 697, 703 (7th Cir. 2012). The Seventh Circuit has directed that district courts must also assess whether the probative value of the "other act" evidence is substantially outweighed by the risk of unfair prejudice, and courts may exclude the evidence under Rule 403 if the risk of unfair prejudice is too great. *United States v. Gomez*, 763 F.3d 845, 856–60 (7th Cir. 2014).

### III. DISCUSSION

The Government has provided notice that during trial it intends to offer evidence:

(a) that Defendant Ingram previously possessed a firearm resembling the one used at the robberies, as observed by victims/witnesses and seen in video surveillance; and (b) that he has previously fired a firearm resembling the one used at the robberies. To the extent such evidence constitutes "other acts" evidence under Fed. R. Evid. 404, the government would seek to introduce it for a variety of non-propensity purposes, including Ingram's identity as the armed robber, which is relevant to all counts. In addition, such evidence is relevant to Counts 5–8 (use of a firearm in furtherance of a crime of violence) in that the gun is indeed a firearm, not a toy gun or an "air pistol."

(Filing No. 69 at 10; *see also* Filing No. 105 at 1.)

Moreover, the Government seeks to offer portions of two "Facebook Live" videos from Ingram's Facebook account that show him possessing a firearm that resembles the firearm used in

3

each of the four robberies. In one Facebook Live video, Ingram is rapping and showing off a firearm. Ingram displays the firearm in his waistband and says, "Got to keep that pistol on me. . .. you know I got it." ([Filing No. 105 at 2](#).) The metadata from the Facebook Live videos show that they were created on September 18, 2017 – less than a month before the first of the four-armed robberies. The Government argues this evidence is highly relevant as the firearm in the Facebook video closely resembles the firearm seen in the store surveillance videos, which helps establish Ingram's identity as the armed robber and that the firearm is real, which is an element of the § 924(c) counts. As noted earlier, the Government also intends to elicit testimony from Cobb regarding her knowledge of and participation in the robberies charged in Counts 2 and 3, and testimony relating to Ingram previously possessing and firing a small semi-automatic handgun resembling the one Ingram used in all four of the robberies.

In addition, the Government seeks to offer testimony from Cobb concerning a long history of domestic violence by Ingram against Cobb, which includes threats toward her, pointing a firearm at her, and his firing of a firearm at her vehicle. The Government explains, "Cobb will testify that minutes before the robbery of Eyes by India on 82nd Street on October 20, 2018 (Count 3), Ingram assaulted Cobb in the car and threatened her with a firearm as he commanded her to join him in the robbery." ([Filing No. 114 at 1](#).) The Government argues that this testimony is admissible as direct evidence of the crimes charged in Counts 3 (robbery) and 7 (use of a firearm) and is relevant to show Ingram's participation in the robberies and his control over Cobb to coerce her to participate in the robberies. Cobb will further testify that she was afraid after Ingram assaulted her and threatened her with the firearm in the car and demanded that she come into the Eyes by India salon with him. The Government argues that Cobb's experiences of prior batteries by Ingram on other occasions, is relevant to show the dominion he exercised over her and why he

4

was able to recruit his pregnant girlfriend to commit an armed robbery with him. The Government contends this testimony is needed to "provide the jury with a full picture" as to how Ingram planned and carried out the robbery charged in Count 3. It also will show that Ingram knew the firearm he possessed during the robberies was in fact a real firearm.

In response to the 404(b) Notices, Ingram asserts that, because the Government does not have an actual firearm to offer into evidence, it seeks to introduce evidence of past bad behavior of an extremely prejudicial nature that is unrelated to the crimes charged in the Indictment. Ingram contends that testimony about domestic violence to show why Cobb participated in the robberies might be relevant to a defense for Cobb, however, Cobb pled guilty and will no longer be tried. Ingram argues that allegations of domestic violence are irrelevant to his case and any defense he may raise. The testimony would be seriously and highly prejudicial and should be refused.

Ingram further argues a history of domestic violence does not prove or disprove that a firearm is real and can fire a bullet. He argues that testimony of domestic violence would only portray him in a bad light and unfairly prejudice the jury against him, risking a conviction based on a perception that Ingram is a bad person. Ingram asserts that any testimony from Cobb that he possessed a firearm on prior occasions only confuses the issues for the jury. He asserts that the issue at trial will be whether the object used in the charged robberies was a real firearm. Testimony of prior possession of a firearm only shows that Ingram may have committed other crimes at an earlier time, but it does nothing to prove or disprove the charged offenses here.

The Court agrees with Ingram's assessment of the possible testimony from Cobb regarding a history of domestic violence. Although a central issue will be whether the object used in the robberies was a real firearm, Cobb's testimony of prior domestic violence will have no probative

5

value for the charged offenses and will be unfairly prejudicial because past domestic violence does nothing to prove or disprove the elements of the charged offenses.

The Government's contention that the challenged evidence is relevant to show why Ingram was able to recruit Cobb to commit an armed robbery with him and to provide the jury a "full picture" as to how Ingram planned and carried out the robbery appears to rely on a theory of "inextricable intertwinement." *See*, *United States v. Taylor*, 522 F.3d 731, 734 (7th Cir. 2008) (A defendant's bad act may be only tangentially related to the charged crime, but it nevertheless could 'complete the story' or 'incidentally involve' the charged offense or 'explain the circumstances'). The Seventh Circuit has barred resort to this theory on the ground that it became "overused, vague, and quite unhelpful." *See United States v. Gorman,* 613 F.3d 711, 719 (7th Cir.2010). Instead, the Court must determine whether evidence is admissible either under Rule 404(b) or as direct evidence of the charged offense. Under Rule 404(b), it simply is not relevant why Cobb chose to participate in the robberies. The proffered testimony regarding a prior history of domestic violence would unfairly prejudice Ingram, as it does not prove or disprove any element of the charged offenses; instead it portrays him as a bad person and risks a conviction based on propensity.

Admissibility of Cobb's testimony that minutes before the robbery of Eyes by India on 82nd Street on October 20, 2018 (Count 3), Ingram assaulted her in the car and threatened her with a firearm as he commanded her to join him in the robbery, is a different story. This evidence is direct evidence of the crimes charged in Counts 3 and 7. Moreover, this evidence is also relevant and admissible under Rule 404(b) to show identity, plan, and that Ingram possessed what Cobb believed to be a real firearm in furtherance of the robbery. This evidence is highly probative of the charges and the probative value outweighs any undue prejudice.

Regarding prior firearm possession, the Government seeks to offer testimony through Cobb about Ingram possessing a firearm on prior occasions as well as Facebook photographs and videos of Ingram displaying and discharging a firearm. Facebook photographs and videos of Ingram wearing clothing and other items (including gold teeth) like the clothing and items worn by the robber are relevant and admissible to establish Ingram's identity as the armed robber. This is so, even if Ingram is also displaying a firearm in those photographs or videos. To alleviate the possibility of propensity, the Court will give a limiting instruction regarding the purpose this evidence can be considered.

In addition, if Cobb is able to testify that she observed Ingram possessing a firearm that appears to be the firearm used in the robberies close in time and on the dates of the robberies, she may offer testimony regarding the type of firearm (a real gun versus a BB gun) that was displayed and its comparison to the firearm she was threatened with on October 20, 2017 and which was used in the robberies charged in Counts 3 and 7. This evidence would be highly probative to show identity and possession of a firearm and the probative value of such evidence would outweigh any undue prejudice. A determination on admissibility of this evidence will have to be made in the context of evidence presented during the trial.

Evidence that Ingram previously fired a firearm resembling the one used in the robberies or fired at Cobb's car on an undisclosed date in the past is deemed inadmissible. The Government has not established when this firing took place in relation to the robberies[1].

The Court is unable to make a pretrial determination regarding the Facebook Live videos of Ingram rapping with a firearm. While this video may have some value to prove or disprove that

---

[1] As noted by the Government in their Reply brief, if Ingram testifies that the handgun was not real or otherwise opens the door, Cobb might then be able to testify on rebuttal that Ingram carried the handgun for personal protection, that she has seen Ingram fire the handgun and that the handgun she observed was indeed real.

Ingram possessed a firearm approximately a month before the charged armed robberies, the Government has not shown in their briefing that the videos have relevance to the issues for trial—whether Ingram possessed a firearm during the charged robberies and whether any such firearm was real. The still shots from Facebook which show Ingram's clothing and other identifiers (including his gold teeth) may be offered as 404(b) evidence to show identity. The still shots are not very legible, and Court has not been allowed to view the Facebook Live video of Ingram rapping. However, having considered the Rule 403 balancing, the Court is unable to determine whether a video, produced a month earlier than the robberies, would be unfairly prejudicial to Ingram, possibly portraying him as a bad character with a propensity for violence. Accordingly, the Court is unable to approve admission of this evidence.

## IV. CONCLUSION

For the reasons stated above, the Court **APPROVES** some of the evidentiary proffers contained in the Government's Trial Brief ([Filing No. 69](#)) and Supplemental Notice Pursuant to Federal Rule of Evidence Rule 404(b), ([Filing No. 105](#)) and **DISAPPROVES** some of the evidence as follows. The Court prohibits the Government from attempting to elicit testimony from Cobb (or other witnesses) regarding any history of domestic violence by Ingram against Cobb as well as testimony regarding Ingram's prior possessions and use of a firearm. However, the Government is permitted to elicit testimony from Cobb regarding the charged offenses that will be tried by the jury as well as the interactions between Cobb and Ingram that occurred just before the robberies as noted in the Government's reply brief (*see* [Filing No. 114](#)). Still shots from Facebook which show Ingram's clothing and other identifiers (including his gold teeth and firearm) may be offered as 404(b) evidence to show identity and that Ingram is the armed robber. Additionally, if she is able, Cobb may testify whether she believes the firearm in the still photograph is the same

8

firearm used in Counts 3 and 7. However, without prior approval from the Court, the Government is not permitted to offer the Facebook Live videos into evidence. During the course of the trial, if the Government believes that any excluded testimony or evidence becomes relevant and admissible, "depending on what develops at trial," ([Filing No. 114 at 3](Filing No. 114 at 3)), counsel may approach the bench and request a hearing outside the presence of the jury so the Court can determine admissibility.

Finally, the parties are to confer and draft a limiting instruction that the Court can read to the jury when 404(b) evidence is offered. The parties should file the agreed upon limiting instruction no later than **noon** on **Friday, November 2, 2018**.

**SO ORDERED.**

Date: 10/29/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael J. Donahoe
INDIANA FEDERAL COMMUNITY DEFENDERS
mike.donahoe@fd.org

Bradley Paul Shepard
UNITED STATES ATTORNEY'S OFFICE
brad.shepard@usdoj.gov

Nicholas J. Linder
UNITED STATES ATTORNEY'S OFFICE
nick.linder@usdoj.gov

Lawrence Darnell Hilton
UNITED STATES ATTORNEY'S OFFICE
lawrence.hilton@usdoj.gov